Michael B. Bernacchi (SBN 163657)
E-mail:  mbernacchi@bwslaw.com
Keiko J. Kojima (SBN 206595)
E-mail:  kkojima@bwslaw.com
BURKE, WILLIAMS & SORENSEN, LLP
444 South Flower Street, Suite 2400
Los Angeles, California 90071-2953
Tel:  213.236.0600  Fax:  213.236.2700

Attorney for Defendants Reliance Standard
Life Insurance Company and Susan
Strickler

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Laura Cyr, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>Reliance Standard Life Insurance Company, an Illinois corporation, and Susan Strickler, an individual,<br><br>        Defendants. | **Case No. 2:23-cv-06257-DSF-RAO**<br><br>**DISCOVERY MATTER**<br><br>**JOINT STIPULATION RE DEFENDANTS' MOTION TO COMPEL WAYNE KUWAHARA'S COMPLIANCE WITH SUBPOENA REQUEST FOR PRODUCTION NO. 1**<br><br>**[Filed concurrently with: Notice of Motion and Motion to Compel; Declarations of Keiko J. Kojima and Craig P. Ramsdell; [Proposed] Order]**<br><br>**Date:      December 11, 2024<br>Time:      10:00 a.m.<br>Ctrm:     590 – 5th Floor<br>Before:   Magistrate Judge Rozella A. Oliver**<br><br>**Discovery Cutoff:  December 13, 2024<br>Pretrial Conference:  February 24, 2025<br>Trial:  March 25, 2025** |

///

///

# TABLE OF CONTENTS

**Page**

I.    DEFENDANTS' INTRODUCTORY STATEMENT ..........................................1

II.   PLAINTIFF'S INTRODUCTORY STATEMENT ............................................3

III.  REQUEST FOR PRODUCTION NO. 1 ......................................................4

    A.    Request For Production No. 1 ......................................................4

    B.    Plaintiff's Response to Request for Production No. 4 ..............................4

        1.    Kuwahara's General Objections .........................................4

        2.    Kuwahara's Objections/Response to Request for Production
           No. 1 ................................................................7

IV.   DEFENDANTS' POSITION RE REQUEST FOR PRODUCTION
    NO. 1 ..........................................................................8

    A.    Background ........................................................8

    B.    The Subpoena and Kuwahara's Objections ..............................9

    C.    Kuwahara Should Be Ordered to Comply with Request No. 1 ...............10

V.    PLAINTIFF'S POSITION RE REQUEST FOR PRODUCTION NO. 1 .........11

1    Defendants Reliance Standard Life Insurance Company and Susan Strickler,
2  Plaintiff Laura Cyr, and Subpoenaed Deponent Wayne Kuwahara, submit this Joint
3  Stipulation for Defendants' Motion to Compel Wayne Kuwahara's Compliance With
4  Subpoena Request For Production No. 1.

5  **I.    DEFENDANTS' INTRODUCTORY STATEMENT**

6    Plaintiff Laura Cyr has sued Defendants Reliance Standard Life Insurance
7  Company ("RSL") and Appeal Analyst Susan Strickler ("Strickler") for intentional
8  infliction of emotional distress ("IIED").  In order to prevail, Cyr must prove not only
9  extreme and outrageous conduct by Defendants beyond the decency of a civilized
10  society, but also establish that the alleged wrongful conduct proximately caused her
11  severe emotional distress and her damages.

12    Cyr maintains that Strickler's purported intentional failure to copy Wayne
13  Kuwahara ("Kuwahara"), her good friend and medical power of attorney, on every
14  email, and her communications regarding medical records, has caused her severe
15  emotional distress that exacerbated all of her physical medical conditions.  Though
16  Cyr disagreed with RSL's claim decision ("Is absolutely awful - No where does a
17  doctor claim I am able to work. . . THERE IS FINDINGS from doctor stating I am
18  TOTALLY DISABLED" [Doc. 96-14, p. 3]; "Please RELEASE MONEY OWED
19  IMMEDIATELY" [Doc. 96-30, p. 5]), and Cyr was "angry" that RSL was ignoring
20  her doctors' conclusions, she maintains Stricker's August 2021 communications are
21  the sole cause of her severe emotional distress and resulting physical problems.

22    Cyr has never undergone psychiatric treatment for her emotional distress from
23  Defendants' conduct.  She also has never been prescribed psychiatric treatment,
24  including medication, to address this alleged emotional distress.  Her therapist, Neil
25  Friedman, treated her for her "brain injury" and interpersonal relationships, like her
26  family and divorce issues, according to a letter written to Plaintiff's counsel in April
27  2024.  [Kojima Decl., ¶7]  In fact, Cyr has no mental health records to produce to
28  support her emotional distress claim.  Instead, Cyr retained psychiatric and neurology

experts in litigation, who opine, accepting Cyr's self-report, that her severe emotional distress solely arose from RSL and Strickler's conduct in August 2021 (as opposed to the termination of benefits, her financial issues, family issues, divorce, medical conditions, etc.) and that her purported exacerbation of symptoms for her physical medical conditions is solely due to her emotional distress from Strickler's August 2021 communications.  [Kojima Decl., ¶8]

Defendants issued a document Request No. 1 ("All documents reflecting any oral and/or written communication with, to and/or from Laura Cyr, from January 1, 2018 to the present, including but not limited to emails, text messages, voicemail messages, or written correspondence") to Kuwahara to obtain relevant information regarding Cyr's communications.  Defendants seek Kuwahara's emails and texts with Cyr to obtain the full picture of her emotional state, activities, stressors, medical conditions, financial matters, interpersonal relationships, family issues, disability claims, and interactions with Strickler and RSL.  Kuwahara maintains the discovery is irrelevant, overbroad, and invades privacy rights.  Given Kuwahara's role in Cyr's disability and in this lawsuit (he is one of Cyr's percipient witnesses), the balance falls in favor of compelling production.  Plaintiff's privacy rights have been waived by filing this lawsuit which directly puts her mental state and activities at issue.

Kuwahara plays a central role in Cyr's case.  According to Cyr, she was so distraught that Strickler did not cc: Kuwahara on all emails that she suffered from severe emotional distress, allegedly causing migraines and worsening symptoms from all of her other medical conditions.  Kuwahara was also involved on the emails regarding Cyr's dispute over the medical records.  Yet, in response to Defendants' subpoena for his communications with Cyr, Kuwahara maintains he has no texts with Cyr regarding her disability claim or emotional state– none.  A broader production for all communications is appropriate.

As to overbreadth, the requests are not overbroad since Defendants are entitled to know what Cyr was communicating to Kuwahara regarding these issues, which are

2

1  directly relevant to her activities, emotional state, stress levels, etc.

2       However, to limit the time period, Defendants are willing to limit Request No.

3  1 to June 1, 2021 to June 1, 2022.

4  **II.    PLAINTIFF'S INTRODUCTORY STATEMENT**

5       Plaintiff has produced *all* communications between her Mr. Kuwahara

6  regarding Defendants' conduct, her emotional distress, and her medical treatment.

7  Mr. Kuwahara even testified that he provided Plaintiff's attorneys with access to all of

8  his records to produce relevant documents to Defendants.

9       Nevertheless, Defendants are steadfast in seeking every single communication

10 between Mr. Kuwahara and Plaintiff regardless of its subject matter or relevance to

11 the parties' claims or defenses.  Defendants' motion to compel, which seeks to pry

12 into every facet of Plaintiff's personal life and Mr. Kuwahara's personal life, is

13 abusive and devoid of legal support.

14      First, Defendants' Request No. 1 is facially overbroad as it seeks information

15 that is irrelevant and thus outside the scope of discovery under Rule 26(b)(1) of the

16 Federal Rules of Civil Procedure.  For example, Defendants are seeking all

17 communications between Mr. Kuwahara and Ms. Cyr regardless of relevance to this

18 litigation, which may include communications regarding books, television shows, the

19 weather, politics, restaurants, their families, or other personal matters.  Defendants

20 admitted as much during the parties' meet-and-confer conference.  Defendants do not

21 provide any legal authority for the position that asserting a claim for intentional

22 infliction of emotional distress ("IIED") subjects a plaintiff or third parties to

23 discovery into every aspect of her personal life, ostensibly because none exists.

24      Moreover, Defendants refused to narrow their facially overbroad request during

25 the parties' meet-and-confer discussions.  As this Court held in its Order re:

26 Discovery Dispute and Granting-in-Part Application to Seal ("Order re: Discovery

27 Dispute") (Doc. 60), "the Court will not rewrite the RFPs as the parties have not made

28 a good faith effort to agree on narrowed language" and "the Court declines to rewrite

1  facially overbroad RFPs."  *Id.* at 5, 9.

2      Defendants' efforts to dig into irrelevant facets of Plaintiff's personal life is

3  harassing and should not be countenanced by the Court, particularly given their

4  history of bad-faith conduct with respect to Plaintiff.  Indeed, Judge Pregerson

5  excoriated RSL when granting Ms. Cyr summary judgment:

6         *[I]t is RSL's behavior that reeks of bad faith.*  It has "lost" the
administrative record. It refused to adjust her benefits even though
7  Richard Walsh agreed that Cyr provided all the information RSL
requested, and even though Walsh "didn't do any additional
8  investigation [to determine whether the wage adjustment was bona fide]
other than reviewing what was contained in our claim file." (Waived
9  Defenses Mot. Ex. A, 99.)
10

11  *Cyr v. Reliance Standard Life Ins. Co.*, 525 F. Supp. 2d 1165, 1176 (C.D. Cal. Nov.

12  19, 2007) (emphasis added).

13      Here, the Court should deny Defendants' motion to compel request no. 1,

14  which seeks information far outside the scope of discovery.

15  **III.**    **REQUEST FOR PRODUCTION NO. 1**

16      **A.**      **Request For Production No. 1[1]**

17      All documents reflecting any oral and/or written communication with, to and/or

18  from Laura Cyr, from January 1, 2018 to the present, including but not limited to

19  emails, text messages, voicemail messages, or written correspondence.  [Defendants

20  are agreeable to limit the time period to June 1, 2021 to June 1, 2022.]

21      **B.**      **Plaintiff's Response to Request for Production No. 4**

22          **1.**      **Kuwahara's General Objections**

23      Responding Party generally objects to the Requests on the grounds set forth

24

---

25  [1] Request for Production No. 2 sought "All documents reflecting any oral and/or written
communication with, to and/or from any PERSON regarding Laura Cyr, her disability claim(s), her
26  medical conditions, and/or her mental or emotional state, from January 1, 2018 to the present,
including but not limited to emails, text messages, voicemail messages, or written correspondence."
27  Kuwahara claims Plaintiff produced all non-privileged responsive documents regarding her
disability claim, medical conditions, and emotional status.
28

below. The Responses set forth herein are subject to and without waiver of any of these general objections ("General Objections"). The assertion of the same, similar, or additional objections or partial responses to individual requests does not waive any of these General Objections. Notwithstanding the following General Objections, Responding Party has specified the objections with respect to which it is withholding documents in response to each request.

1.      Responding Party objects to any request to the extent that it seeks to impose obligations upon Responding Party beyond those required by Rule 45 of the Federal Rules of Civil Procedure. Responding Party will interpose objections, provide responses, and produce documents only as required by Rule 45.

2.      Responding Party objects that the date called for the production of documents in the Requests fails to allow a reasonable time to comply because it calls for the production of documents within five calendar days of the date that the Requests were served.

3.      Responding Party objects to the Requests on the grounds that any documents responsive to the Requests relevant to the parties' claims or defenses have already been produced by Plaintiff in this litigation and, therefore, Defendants Reliance Standard Life Insurance Company ("RSL") and Susan Strickler have equal access to the documents.

4.      Responding Party objects to each request to the extent that it seeks to impose obligations upon Responding Party beyond those imposed by the Federal Rules of Civil Procedure, the Local Civil Rules of the United States District Court for the Central District of California, and any applicable standing orders of the Court.

5.      Responding Party objects to the Requests to the extent that they seek to impose a duty to search for documents that are not in Responding Party's possession, custody, or control.

6.      Responding Party objects to the Requests because they are overly broad, unduly burdensome, and oppressive because they seek information that is already in the possession, custody, or control of Defendants, Defendants' counsel, or third parties with whom Defendants have the ability to share information.

7.      Responding Party objects to each request to the extent that it fails to state with sufficient particularity the information and categories of information to be produced or inspected.

8.      Responding Party objects to each request to the extent that it

5

seeks information protected from disclosure by the right to privacy pursuant to California law, the United States Constitution, and any other applicable laws.

9.      Responding Party objects to each request to the extent that it seeks information already known by Defendants and/or their agents on the ground that such information can be obtained from a source that is more convenient, less burdensome, and less expensive than from Responding Party.

10.     Responding Party objects on the grounds that the requests are vague and ambiguous, overly broad, and unduly burdensome to the extent that they fail to include a time frame.

11.     The omission of an objection on a particular ground or grounds shall not be construed as a waiver of Responding Party's right to object on any additional ground or grounds.

12.     Responding Party's responses to individual requests, notwithstanding the objectionable nature of the requests themselves, shall not be construed as: i) an admission that the information requested is relevant; ii) a waiver of these General Objections; or iii) an agreement that a request for similar information in this proceeding or any other related proceedings will be treated in a similar manner.

13.     In responding to the Requests, Responding Party does not in any way waive or intend to waive any privilege or other protection, or objection, but rather intends to preserve such privileges, protections, or objections, and to specifically preserve the following:

a.      All objections as to the competency, relevancy, materiality, and admissibility of any information provided, Responding Party's response, or the subject matter;

b.      All objections as to vagueness, ambiguity, or other defect in the form of any request and any objections based on the undue burden imposed by any request;

c.      All rights to object based on any Order of the Court;

d.      All rights to object on any ground to the use of any of the responses or documents produced, or their subject matter, in any subsequent proceedings, including, but not limited to, the trial of this or any other action;

e.      All rights to object on any ground to any further document requests, interrogatories, or other discovery requests involving or related to the subject matter of any document requests, interrogatories, or other discovery requests;

f.      All rights to revise, supplement, correct, clarify, or amend responses to requests, including, but not limited to, based on allegations

set forth in any pleadings or amended pleadings; and

       g.     Any and all privileges and rights under the Federal Rules of Civil Procedure or other statutes, guidelines, or common law, including, but not limited to, the attorney-client privilege and work product doctrine. The inadvertent production by Responding Party of information protected from disclosure by any such privilege and/or rights under the Federal Rules of Civil Procedure or other statutes, guidelines, or common law, including, but not limited to, the attorney-client privilege and work product doctrine, is not intended to constitute a waiver of any such privileges or rights.

**2.     Kuwahara's Objections/Response to Request for Production No. 1**

Responding Party incorporates by reference its General Objection Nos. 1-9 and 11-13.

Responding Party objects on the grounds that the terms "documents," "reflecting," and "communication" are vague and ambiguous.

Responding Party objects to this request on the grounds that it is overly broad, irrelevant, harassing, oppressive, and unduly burdensome, and is not proportional to the needs of the case for the following reasons: i) the request seeks documents that are irrelevant to the parties' claims or defenses; ii) the request makes no effort to distinguish between documents that pertain to Plaintiff's emotional distress as opposed to irrelevant medical conditions or documents that have no connection at all to any condition of Plaintiff; iii) the request indiscriminately seeks documents over a period exceeding six years; iv) the parties have equal access to documents responsive to the request that are relevant to the parties' claims or defenses because such documents already have been produced by Plaintiff in this litigation; v) due to the breadth of the request, the documents sought are not important relative to Plaintiff's right to confidentiality, privacy, and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"); and vi) the burden and expense on Responding Party of producing documents in response to such an unqualified request outweigh the likely benefit of the documents. Documents are being withheld on the

1    basis of all of the foregoing objections.

2         Responding Party objects to the request on the grounds that it seeks information

3    protected by the attorney-client privilege and work product doctrine. Responding

4    Party is withholding documents based on this objection to the extent that the

5    documents are otherwise discoverable.

6    **IV.    DEFENDANTS' POSITION RE REQUEST FOR PRODUCTION NO. 1**

7         **A.    Background**

8         Wayne Kuwahara is a longtime good friend of Cyr who lives in Grants Pass,

9    Oregon.  Kuwahara and Cyr were colleagues at Sonatech, which was bought out by

10   Channel Technologies, Inc.  Kuwahara has a medical power of attorney for Cyr.  He

11   also serves as the Social Security representative payee after Cyr accused her ex-

12   husband of stealing her money.   [Kojima Decl., ¶6]   In this lawsuit, Cyr claims she

13   suffered severe emotional distress from Susan Strickler's "extreme and outrageous"

14   conduct of not cc:ing Kuwahara on all emails to Cyr.  (Cyr herself did not cc:

15   Kuwahara on all emails to RSL.)  Cyr also claims that she suffered severe emotional

16   distress by Strickler informing her she needed medical records and had not received

17   medical records from certain providers.  Kuwahara purportedly did not have any

18   conversations with Cyr about the status of these records.  [Exh. "4" to Kojima Decl.,

19   p. 193:15-25]  Kuwahara testified he has no understanding of whether RSL obtained

20   the Dr. Hrach and Dr. Deol records it requested.  [*Id*., p. 202:8-20]  According to

21   Kuwahara, Cyr disagreed with RSL's claim determination given what her doctors had

22   told the company and she was angry that RSL was ignoring the doctor's conclusions.

23   [*Id*., p. 170:22-171:25]   Kuwahara also testified that he was unaware of any specific

24   phone call that Cyr had with Strickler.  [*Id*., p. 214:5-12]

25        Kuwahara and Cyr would text and phone each other, and occasionally see each

26   other.  Right before he had his deposition taken on October 1, 2024, Kuwahara spent

27   the weekend with Cyr at the Monterey Jazz Festival (September 27-29).  [*Id*., p.

28   20:15-21:2]  However, he claims they never discussed her case or his upcoming

1  deposition.  [*Id*., p. 22:4-22:19]

2      Kuwahara testified that he did not conduct an additional search for any

3  document production under the subpoena.  [*Id*. at 15:4-21]  His search was about 6

4  months before, where gave a download of his computer and phone to Plaintiff's

5  counsel in a "data dump" for them to go through to respond to Plaintiff's document

6  production.  [*Id*. at 15:4-21; 27:13-24]  Accordingly, Plaintiff's counsel still has the

7  content of Kuwahara's phone and computer.

8      **B.**   **The Subpoena and Kuwahara's Objections**

9      In their initial disclosures Plaintiff specifically identified Kuwahara as a

10  witness to testify to "Ms. Cyr's interaction with Defendants RSL and Susan Strickler,

11  including the failure to include him on correspondence, his limited power of attorney,

12  and the distress suffered by Ms. Cyr."  [Kojima Decl., ¶2]

13      On September 26, 2024, Defendants served Kuwahara with a deposition

14  subpoena with a documents request for his deposition on October 1, 2024.  (This was

15  a re-noticed subpoena to reschedule Kuwahara's deposition.)  [Exh. "1" to Kojima

16  Decl."]  Kuwahara, who is represented by Plaintiff's counsel, served his Objections to

17  the subpoena on September 30, 2024.  [Exh. "2" to Kojima Decl.]   Kuwahara stood

18  on his objections and did not produce any documents.  He was deposed on October 1,

19  2024.  [Kojima Decl., ¶3]

20      On October 18, 2024, Defendants sent a meet and confer letter to Plaintiff's

21  counsel, seeking Kuwahara's compliance with the subpoena.  [Exh. "3" to Kojima

22  Decl.]   The parties met and conferred on October 28, 2024 wherein Defendants

23  explained that there were no texts or emails to Cyr produced by Kuwahara regarding

24  her claim (the only ones from Kuwahara were to RSL and/or medical providers which

25  are in the claim file or Plaintiff's production).  [Kojima Decl., ¶4]  Plaintiff's counsel

26  maintained that Kuwahara produced all documents related to Cyr's disability claim,

27  her emotional distress, and damages, and that a demand for any other communications

28  between them was overbroad, irrelevant, and invaded Cyr's privacy rights.

1  Defendants explained that the entirety of Kuwahara's texts were necessary to put

2  Cyr's communications and emotional state into context.  Plaintiff disagreed,

3  necessitating this motion.  [Kojima Decl., ¶5]

4      **C.**    <u>**Kuwahara Should Be Ordered to Comply with Request No. 1**</u>

5      Defendants are entitled to Kuwahara's full compliance of Request No. 1 of the

6  Subpoena, which seeks his communications with Cyr, including texts and emails.

7  Given that there are no mental health records documenting Cyr's emotional state and

8  thoughts during the operative time period of Cyr's problems with Strickler and the

9  termination of her claim, there is no question that Kuwahara's texts and emails with

10  Cyr should be produced.

11      Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil actions,

12  in part as follows:

13      "Unless otherwise limited by court order, the scope of discovery is as

14      follows: Parties may obtain discovery regarding any nonprivileged
    matter that is relevant to any party's claim or defense and proportional to

15      the needs of the case, considering the importance of the issues at stake in
    the action, the amount in controversy, the parties' relative access to

16      relevant information, the parties' resources, the importance of the

17      discovery in resolving the issues, and whether the burden or expense of

18      the proposed discovery outweighs its likely benefit. Information within
    this scope of discovery need not be admissible in evidence to be

19      discoverable."

20      Clearly, Defendants are entitled to information to test Cyr's contentions.  This

21  includes relevant information and documents that would provide insight into Cyr's

22  thoughts, emotions, actions, and communications to determine what exactly was

23  transpiring in 2021.  Kuwahara is one of Cyr's closest friends, whom she entrusts to

24  be her medical power of attorney and asked be involved in her disability claim.

25      Defendants require these communications to obtain the full sense of her mental

26  state, claimed severe emotional distress, activities, and other potential causes of her

27  emotional distress and damages, including other stressors, her medical conditions,

28  financial issues, family issues, and her divorce, etc.

Kuwahara maintains he has no emails or texts regarding Cyr's disability claim and interactions with Strickler and RSL, other than what was in the claim file and her production. However, Defendants should be able to discover what Cyr was communicating with Kuwahara about during the time she claims Strickler should have been cc:ing Kuwahara. The information is also crucial to know what Cyr was expressing to Kuwahara during this highly relevant time that Cyr contends Strickler mistreated her.

Plaintiff has put her mental condition at issue in this litigation by making a claim for IIED. To prevail on this claim, Cyr must show she suffered severe or extreme emotional distress and that plaintiff's outrageous conduct was the proximate cause of such emotional distress. *See Fletcher v. Nat'l Life Ins. Co.*, 10 Cal. App. 3d 376 (1970). Under these circumstances, Defendants are entitled to discovery on issues pertaining to Cyr's mental health and activities. *See In re Lifschutz*, 2 Cal. 3d 415 (1970). Courts have held that insight into a plaintiff's emotional state through social media, photos, and communications are ripe for production. *See, e.g. E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 436 (S.D. Ind. 2010) (pictures of the claimant taken during the relevant time period and posted on a claimant's profile will generally be discoverable because the context of the picture and the claimant's appearance may reveal the claimant's emotional or mental status). Defendants require a comprehensive inquiry into Cyr's activities and thought processes.

Plaintiff claims that Defendants' request is too uncertain and overbroad because it will cover information beyond Cyr's disability claim and any discussion regarding her emotional state. However, the information is required in context, which is solely within Cyr and Kuwahara's possession.

## V.    PLAINTIFF'S POSITION RE REQUEST FOR PRODUCTION NO. 1

Defendants' request is harassing, abusive, and far too overbroad. Indeed, Request No. 1 seeks "[a]ll documents reflecting any oral and/or written communication with, to and/or from Laura Cyr, from January 1, 2018 to the present,

including but not limited to emails, text messages, voicemail messages, or written correspondence." The request is not limited to information within the scope of discovery prescribed by Rule 26(b) of the Federal Rules of Civil Procedure.

Instead, Defendants are seeking every single communication between Mr. Kuwahara and Ms. Cyr regardless of the subject matter or relevance, which far exceeds the scope of discovery. Notably, Plaintiff has produced *all* communications I Mr. Kuwahara's possession regarding Defendants' conduct, her emotional distress, and her medical treatment. (Declaration of Craig P. Ramsdell in Support of Plaintiff's Opposition to Defendants' Motion to Compel ("Ramsdell Decl."), at ¶ 3).

Indeed, Mr. Kuwahara testified: "I gave a download of everything on my computer, my phones to Mr. Garofolo . . ." (*Id.* at 27:18-22). Mr. Kuwahara further testified as follows:

> Q: Okay . . . [S]o you are saying, as I understand it, you gave [Mr. Garofolo] complete access to everything, all your search history, everything, you basically just turned the computer over?
>
> [A:] Yes.
>
> Q: And you turned all your data on your phone over to him?
>
> [A:] Yes.
>
> Q: And you didn't make any distinction between data that might be related to your family, your friends or your privacy, your private accounts versus what might be related to Ms. Cyr?
>
> [Objection omitted]
>
> [A:] No.
>
> Q: How did you do the data dump?
>
> [A:] I gave access to Mr. Garofolo of my system, um, and the staff were able to log onto my machine and get a complete data dump, also to my phone.

(*Id.* at 29:18-30:15).

1    Plaintiff then produced all information in Mr. Kuwahara's possession, custody

2 or control responsive to any of Defendants' document requests. (*Id.* at ¶ 3). There are

3 no additional relevant documents to produce. (*See id.*).

4    Moreover, Defendants' document request is facially overbroad under Rule

5 26(b) of the Federal Rules of Civil Procedure. Rule 26(b) requires that discovery be

6 "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Defendants'

7 request seeks all communications between Mr. Kuwahara and Ms. Cyr regardless of

8 subject matter. One can easily fathom several types of communications that would be

9 completely irrelevant to the parties' claims or defenses, such as messages regarding

10 books, television shows, the weather, politics, sports, and restaurants, as well as

11 messages very personal in nature. Defendants' document request is far too overbroad

12 to be permitted. And, as this Court held in its Order re: Discovery Dispute, the Court

13 will not rewrite the RFPs as the parties have not made a good faith effort to agree on

14 narrowed language" and "the Court declines to rewrite facially overbroad RFPs."

15 (Order re: Discovery Dispute at 5, 9).

16    Even if the Court were to hold that Defendants' request does not seek irrelevant

17 information (which it should not), the burden and expense to Mr. Kuwahara to

18 produce all of his communications with Ms. Cyr, even if for a year period, may be

19 substantial. Because Defendants' Request includes evidence that would have no

20 probative value, the burden and expense to Mr. Kuwahara would outweigh any

21 benefit to Defendants because such information is irrelevant.

22    Plaintiff's claim for IIED places her emotional state at issue in this litigation.

23 *See Equal Employment Opportunity Commission v. Dudley Perkins Co.*, No. C 08-

24 4552 CW (JL), 2010 WL 11714698, at *5 (N.D. Cal. April 1, 2020). However, an

25 IIED claim does not subject a plaintiff or a third party to unfettered discovery into

26 every facet of her life without restriction, and Defendants have not provided any legal

27 authority to that effect.

28    The cases cited by Defendants do not stand for the stated propositions and

actually support Plaintiff.  In *In re Lifschutz*, the California Supreme Court explored the limited waiver of the psychotherapist-patient privilege when a patient puts her emotional state at issue in litigation.  2 Cal. 3d 415 (1970).  The court explained that "the patient-litigant exception of section 1016 of the Evidence Code compels disclosure of only those matters which the patient himself has chosen to reveal by tendering them in litigation." *Id.* at 427.  The court further stated as follows:

> Under section 1016 disclosure can be compelled only with respect to *those mental conditions* the patient-litigant has "disclose[d] ... by bringing an action in which *they* are in issue" (*City & County of San Francisco v. Superior Court*, *supra.*, 37 Cal.2d 227, 232); communications which are not directly relevant to those specific conditions do not fall within the terms of section 1016's exception and therefore remain privileged. Disclosure cannot be compelled with respect to other aspects of the patient-litigant's personality even though they may, in some sense, be "relevant" to the substantive issues of litigation.  The patient thus is not obligated to sacrifice all privacy to seek redress for a specific mental or emotional injury; the scope of the inquiry permitted depends upon the nature of the injuries which the patient-litigant himself has brought before the court.

(*Id.* at 435).

Even though the case of *E.E.O.C. v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 436 (S.D. Ind. 2010) is out-of-circuit, it stands for the exact opposite of what Defendants' purport.  The *E.E.O.C.* court held that "the simple fact that a claimant has *had* social communications is not necessarily probative of the particular mental and emotional health matters at issue in the case.  Rather, it must be the substance of the communication that determines relevance." *Id.* at 435.  Here, Plaintiff produced all relevant communications in the possession, custody, or control of both herself and Mr. Kuwahara.  (Ramsdell Decl. at ¶ 3).

Moreover, Defendants' motion to compel is replete with false and inflammatory statements ostensibly designed to impugn the character of Plaintiff and Mr. Kuwahara, and which have no bearing on this matter.  Defendants' assertion that Mr. Kuwahara testified that Plaintiff was distressed about RSL's termination of her benefits is a

1  blatant mischaracterization of his deposition testimony.  Mr. Kuwahara testified, *inter*
2  *alia*, that Plaintiff suffered distress because "she didn't feel she was being treated in a
3  fair manner, you know, humane manner [and] [her] drug usage has gone up, you
4  know, that her doctors are prescribing, and like I said before, that I see when Humana
5  sends me the approval letters."  (Ramsdell Decl. at ¶ 2, Ex. 1, Kuwahara Depo. at
6  217:6-12).  Defendants mischaracterize Mr. Kuwahara's testimony as to several other
7  matters as well, but Plaintiff does not find it necessary to specifically refute each
8  instance as Defendants' statements are not relevant to their motion to compel.

9

10  Dated:  November 20, 2024          BURKE, WILLIAMS & SORENSEN, LLP

11

12                                     By: */s/ Keiko J. Kojima*
13                                          Michael B. Bernacchi
                                            Keiko J. Kojima
14                                          Attorneys for Defendants Reliance
                                            Standard Life Insurance Company and
15                                          Susan Strickler

16

17  Dated:  November 20, 2024          GAROFOLO & RAMSDELL, LLP

18

19                                     By: */s/ Craig P. Ramsdell*
20                                          Joseph A. Garofolo
                                            Craig P. Ramsdell
21                                          Attorneys for Plaintiff
                                            Laura Cyr and Subpoenaed Deponent
22                                          Wayne Kuwahara

23

24

25

26

27

28

# SIGNATURE ATTESTATION

Pursuant to Civil Local Rule 5.1, I hereby certify that the content of this document is acceptable to Craig P. Ramsdell, counsel for Plaintiff Laura Cyr and Subpoenaed Deponent Wayne Kuwahara, and that I have obtained Mr. Ramsdell authorization to affix his electronic signature to this document.

Dated:  November 20, 2024                    BURKE, WILLIAMS & SORENSEN, LLP


                                            By:  */s/ Keiko J. Kojima*
                                                 Michael B. Bernacchi
                                                 Keiko J. Kojima
                                                 Attorneys for Defendants Reliance
                                                 Standard Life Insurance Company and
                                                 Susan Strickler